UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL COAKER, et al.,<br><br>Defendants. | CASE NO. C14-1888JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Plaintiff Probuilders Specialty Insurance Company, RRG's ("PBSIC") motion for summary judgment seeking a declaration that PBSIC owes no duty to indemnify Defendants Michael and Marilee Coaker ("the Coakers"), Sundance Builders, Inc. ("Sundance"), and Mike's Roofing, Inc. ("Mike's Roofing") for damages arising out of the construction of the Coakers' single-family home in Duvall, Washington.  (*See* Mot. (Dkt. # 16) at 1-2; *see also* Reply (Dkt. # 21) at 1.)  The Coakers

ORDER- 1

and Sundance oppose PBSIC's motion.  (*See* Resp. (Dkt. # 19).)  The court has reviewed the motion, all submissions filed in support of and opposition to the motion, the balance of the record, and the relevant law.  Being fully advised,[1] the court GRANTS PBSIC's motion for summary judgment.

## II.   BACKGROUND

This is an insurance coverage case that arises out of a mistake concerning property lines.  In 2004, the Coakers purchased a piece of real property in Duval, Washington, for the purpose of building one or more houses there.  (Coaker Decl. (Dkt. # 20) ¶ 3; *see id.* ¶ 18, Ex. A ("Findings & Conclusions")[2] at ¶¶ 1F, 5F.)  Adjacent to the Coakers' property sits a parcel of undeveloped forest land owned by brothers Fukuen Eric, Fu-Cheng, and Kuan-Ming Chen ("the Chens").  (*See* Findings & Conclusions ¶ 1F; Coaker Decl. ¶ 4.)  The Chens' property included a 30-foot by approximately one-quarter-mile strip of land known as "the panhandle" that extended out to the west from the bulk of the Chens' property.  (*See* Findings & Conclusions ¶ 1F.)  The panhandle lay between the southern border the Coakers' property and the northern border of the property of another

---

[1] No party has requested oral argument, and the court deems oral argument unnecessary to the disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] As discussed below, this case is related to underlying litigation involving the Coakers and Sundance in King County Superior Court.  A bench trial took place in that litigation, after which the judge, the Honorable Samuel Chung, issued findings of fact and conclusions of law. (*See* Findings & Conclusions.)  Judge Chung organized his findings of fact into paragraphs numbered 1-13, and his conclusions of law into paragraphs numbered 1-6.  When citing to Judge Chung's opinion, this court will affix "F" or "L" to the paragraph number to indicate a finding of fact or a conclusion of law, respectively.  Thus, if the court cites to "Findings & Conclusions ¶¶ 1F, 3L," the court is referencing Judge Chung's first finding of fact and third conclusion of law.

neighbor, Robert Wilan.[3]  (*See id.*)  Mr. Coaker did not know of the panhandle when he and his wife purchased their property, and he mistakenly believed that his southern property line abutted Mr. Wilan's northern property line.  (*See id.* ¶ 5F; Coaker Decl. ¶¶ 4-5.)

Sundance Builders, Inc. is a company that the Coakers formed in 2005 for the purpose of constructing residential homes and townhouses.  (*See* Coaker Decl. ¶ 2; Findings & Conclusions ¶ 4F.)  Until Sundance became inactive in 2012, Mr. and Ms. Coaker were Sundance's Vice President and President, respectively.  (Coaker Decl. ¶ 2.)  PBSIC insured Sundance under four year-long commercial general liability ("CGL") policies, the total effective period of which stretched from November 1, 2005, to December 1, 2009.  (*See* Hanavan Decl. (Dkt. # 23) ¶ 4, Ex. A ("1st Policy"); Skinner Decl. (Dkt. # 17) ¶¶ 14-16, Exs. 13 ("2d Policy"), 14 ("3d Policy"), 15 ("4th Policy");[4] *see also* Coaker Decl. ¶¶ 10-11, 14-16.)  These policies provide three coverages:  Bodily Injury and Property Damage (Coverage A),[5] Personal Injury and Advertising Injury

---

[3] Judge Chung spells this neighbor's last name "Wilan" (*see, e.g.*, Findings & Conclusions ¶ 1F), while Mr. Coaker spells the last name "Wilen" (*see, e.g.*, Coaker Decl. ¶ 5).  The court follows Judge Chung's spelling in this order.

[4] When citing to specific pages of the policies, the court will use the CM/ECF page numbers at the top of the pages.

[5] Under Coverage A, PBSIC promised to "pay those sums that an insured becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies."  (1st Policy at 18; 2d Policy at 34; 3d Policy at 32; 4th Policy at 29 (emphasis omitted).)  Coverage A is subject to multiple exclusions, including exclusion (J)(5), which provides that "[t]his insurance does not apply to . . . [p]roperty damage to . . . [a]ny real property on which you . . . are performing operations, if the property damage arises out of those

(Coverage B), and Medical Payments (Coverage C).  (*See* 1st Policy at 18-19, 30; 2d Policy at 34-35, 46; 3d Policy at 32-33, 44; 4th Policy at 29-30, 41.)

In 2008, the Coakers, acting through Sundance, began building a house for themselves.  (*See* Coaker Decl. ¶ 5; Findings & Conclusions 7F.)  Defendants believed that they were building the house entirely on the Coakers' property, but in fact the house encroached on the Chens' panhandle.  (*See* Coaker Decl. ¶ 5; Findings & Conclusions ¶¶ 7F-8F.)  When Mr. Coaker learned of the error, he contacted Eric Chen and began negotiating a possible solution.  (*See* Coaker Decl. ¶¶ 5-6; Findings & Conclusions ¶¶ 8F-11F.)  According to Mr. Coaker, "[f]or several years, [Eric] Chen and Sundance worked together in an attempt to remedy Sundance's mistake."  (Coaker Decl. ¶ 6; *see also id.* ¶¶ 8-9; Findings & Conclusions ¶¶ 9F-12F.)  These negotiations produced an agreement to adjust the boundary lines of the properties at issue ("the boundary agreement") and an agreement whereby the Coakers agreed to pay the attorney fees and costs the Chens incurred in resolving their claims against the Coakers ("the fee agreement").  (*See* Skinner Decl. ¶ 4, Ex. 3 ("Bound. Agr."), ¶ 10, Ex. 9 ("Fee Agr."); Coaker Decl. ¶¶ 6, 9; Findings & Conclusions ¶¶ 10F-11F.)[6]  The boundary agreement ultimately fell through,

---

operations . . . ."  (1st Policy at 20, 22; 2d Policy at 36, 38; 3d Policy at 34, 36; 4th Policy at 31, 33 (emphasis omitted).)

[6] The record contains a discrepancy concerning the date on which Mr. Coaker and Mr. Chen entered into the fee agreement.  Judge Chung found that Mr. Coaker and Mr. Chen executed the fee agreement on August 10, 2011.  (*See* Findings & Conclusions ¶¶ 10F-11F.)  Mr. Coaker attests that the correct date is August 12, 2012 (Coaker Decl. ¶ 9), while August 10, 2012, is the date written on the fee agreement that PBSIC submitted with its motion (Fee Agr. at 1).  This discrepancy is immaterial to the present dispute.

however, and at some point negotiations ceased.  (*See* Findings & Conclusions ¶ 12F; Coaker Decl. ¶ 17.)

In 2014, the Chens filed suit against the Coakers, Sundance, and Mike's Roofing[7] in King County Superior Court alleging causes of action for trespass and negligence and seeking damages, ejectment, and specific performance of the boundary agreement.  (*See* Skinner Decl. ¶¶ 11-12, Exs. 10 ("Petition"), 11 ("Am. Petition"); Findings & Conclusions ¶ 12F; Coaker Decl. ¶ 17.)  PBSIC received notice of the Chens' suit on August 8, 2014.  (Compl. (Dkt. # 1) ¶ 16; Ans. (Dkt. # 12) ¶ 16.)  PBSIC defended under a reservation of rights.  (*See* Skinner Decl. ¶¶ 17-18, Exs. 16 ("1st RoR Letter"), 17 ("2d RoR Letter").)  The case proceeded to a bench trial before the Honorable Samuel Chung, and on August 17, 2015, Judge Chung issued his findings of fact and conclusions of law.  (*See* Findings & Conclusions.)  Judge Chung found that the Coakers had been negligent in building the house on the Chens' panhandle.  (*See id.* ¶¶ 7F-8F, 3L.)  Nevertheless, Judge Chung concluded that the appropriate remedy was to quiet title to the panhandle in the Coakers and require the Coakers to pay the Chens the monetary value of that land.  (*See id.* ¶¶ 3L-5L.)  Judge Chen also concluded that the fee agreement is enforceable against the Coakers.  (*See id.* ¶ 6L.)

---

[7] According to PBSIC, Mike's Roofing is another company owned by the Coakers.  (Mot. at 4 n.2; *see also* Findings & Conclusions ¶ 4F (finding that Mr. Coaker has been "a roofer and a house contractor").)  Mr. Coaker does not refute that claim but asserts that Mike's Roofing "was not involved in any way with the construction of the House."  (Coaker Decl. ¶ 19.)  He also states that the Chens dismissed Mike's Roofing from the underlying lawsuit.  (*Id.*)

On December 12, 2014, PBSIC filed the instant action contesting coverage. (*See* Compl.)  After trial in the underlying litigation and just before Judge Chung issued his ruling, PBSIC filed the motion now before this court.  (*See* Mot. (filed on August 13, 2015).)  PBSIC asks for summary judgment declaring that the policies it issued to Sundance provide no coverage for any damages arising out of the construction of the Coakers' house.  (*See id.* at 1-2.)  PBSIC offers several arguments to support this request, including that (1) no "property damage" occurred, as the policies define that term, and (2) even if property damage did occur, various exclusions preclude coverage.  (*See id.* at 2.)  Sundance and the Coakers contest those assertions.  (*See* Resp.)

## III.   DISCUSSION

**A.   Legal Standards**

### 1.  Summary judgment

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the nonmoving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.  In

determining whether the fact-finder could reasonably find in the nonmoving party's favor, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

2. <u>Insurance contract interpretation</u>

The interpretation of an insurance policy is a question of law for the court. *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002). Insurance policies are contracts, which are construed as a whole with the terms interpreted as they would be understood by an average person purchasing insurance. *Id.* "Where a term is undefined, it is assigned its ordinary meaning." *Vision One, LLC v. Phila. Indem. Ins. Co.*, 276 P.3d 300, 306 (Wash. 2012). Ambiguities in the policy are construed against the insurer. *Id.* If the language of an insurance policy is clear and unambiguous, however, the court must enforce it as written and may not create ambiguity where none exists. *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 951 P.2d 250, 256 (Wash. 1998). A term is ambiguous if it is susceptible to two different interpretations, both of which are reasonable. *Holden v. Famers Ins. Co. of Wash.*, 239 P.3d 344, 347 (Wash. 2010); *B&L Trucking*, 951 P.2d at 256. A term is not ambiguous merely because the insurer could have further clarified or expressly defined it. *See State Farm Fire & Cas. Co. v. English Cove Ass'n*, 88 P.3d 986, 991 (Wash. Ct. App. 2004).

The determination of whether coverage exists involves a burden-shifting framework. *See McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003-04 (Wash. 1992). The insured bears the initial burden to demonstrate that the loss falls

within the scope of the policy's insured losses.  *See id.*  If the insured makes that demonstration, the insurer can avoid coverage by showing that specific policy language excludes the loss.  *See id.* at 1004.  Exclusions from coverage are strictly construed against the insurer because they are contrary to the protective purpose of insurance.  *Stuart v. Am. States Ins. Co.*, 953 P.3d 462, 464 (Wash. 1998).

**B.  Coverage**

    1.  <u>Bodily injury, advertising injury, and personal injury</u>

Before reaching the disputed portion of PBSIC's motion, the court turns briefly to an issue on which Defendants offer no opposition:  whether PBSIC has a duty to indemnify Defendants under the policies' coverages for bodily injury, advertising injury, and personal injury.  PBSIC argues, with citations to relevant policy provisions, that neither the allegations in the underlying litigation nor any facts in the record in this case trigger those coverages.  (*See* Mot. at 9-12.)  Defendants do not rebut this argument and in fact concede that "[t]he Chens do not claim 'bodily injury', [sic] as that term is defined in the policies."  (Resp. at 10; *see also id.* at 1-16.)  The court agrees with PBSIC and finds that summary judgment in PBSIC's favor is appropriate on this issue.[8]  PBSIC has

---

[8] Only personal injury coverage comes within shouting distance of applying to this case.  The policies define personal injury as "injury, other than bodily injury, arising out of one or more of the following offenses:  [a] False arrest, detention, or imprisonment; [b] Malicious prosecution; [c] Actual and complete physical eviction of a person from a dwelling; [d] Oral or written publication of material that slanders or libels a person or organization; or [e] Oral or written publication of material that violates a person's right of privacy."  (1st Policy at 39; 2d Policy at 56; 3d Policy at 54; 4th Policy at 51.)  The Washington Supreme Court has explained that in considering whether personal injury coverage applies, courts should compare the types of claims alleged in the underlying complaint to the offenses listed in the policy.  *See Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1179-80 (Wash. 1998).  Coverage may exist if a claim in the

1  no duty under the policies' bodily injury, advertising injury, and personal injury

2  coverages to indemnify Defendants for damages arising out of the construction of the

3  Coakers' house.

4     2.  Property damage & exclusion (J)(5)

5      PBSIC's motion turns on the parties' dispute over whether the policies' property

6  damage coverage applies here.  PBSIC asserts that such coverage does not apply because

7  the underlying litigation did not involve "property damage," as the policies define that

8  term.  (*See* Mot. at 9-11.)  PBSIC further argues that even if the underlying litigation

9  involved property damage, multiple exclusions bar coverage for such property damage.

10  (*See id.* at 13-20.)  The first exclusion on which PBSIC relies is exclusion (J)(5).  (*See id.*

11  at 13-16.)  Defendants counter that the relevant policy provisions are ambiguous and

12  therefore summary judgment is inappropriate.  (*See* Resp. at 9-15.)

13      The court concludes that exclusion (J)(5) precludes coverage for damages arising

14  out of the construction of the Coakers' house.  Even if the underlying litigation involved

15  property damage as the policies define that term,[9] the policies' property damage coverage

16  ―――――――――――――――――――

17  complaint is equivalent to one of the listed offenses.  *See id.* at 1183.  Here, only offense "c" is arguably comparable to the Chengs' claims for trespass and negligence.  The court concludes,
18  however, that trespass and negligence are not equivalent to the specific offense of "[a]ctual and complete physical eviction of a person from a dwelling" (1st Policy at 39; 2d Policy at 56; 3d
19  Policy at 54; 4th Policy at 51), particularly where the underlying trespass and negligence claims concern a strip of unoccupied forest land.

20
    [9] Because the court concludes that an exclusion bars coverage, the court does not decide
21  the interesting but relatively unexplored question of whether an encroaching improvement that results in a judicially imposed exchange of money for real property constitutes "property
22  damage," where that term is defined as "physical injury to tangible property."  (1st Policy at 40; 2d Policy at 56-57; 3d Policy at 54-55; 4th Policy at 51-52.)  Nor does the court decide the

ORDER- 9

remains subject to multiple exclusions. Thus, the policies obligate PBSIC to pay "those sums that an insured becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies." (1st Policy at 18; 2d Policy at 34; 3d Policy at 32; 4th Policy at 29 (emphasis omitted).) Pursuant to exclusion (J)(5), however, "[t]his insurance does not apply to . . . [p]roperty damage to . . . [a]ny real property on which you . . . are performing operations, if the property damages arises out of those operations . . . ." (1st Policy at 20, 22; 2d Policy at 36, 38; 3d Policy at 34, 36; 4th Policy at 31, 33 (emphasis omitted).)

It is undisputed that Sundance was in the home construction business (*see* Coaker Decl. ¶ 2; Findings & Conclusions ¶ 4F; Reply at 6), that Sundance selected the site for the Coakers' house and constructed the house on that site (*see* Coaker Decl. ¶¶ 5, 8-9, 17; Resp. at 12), that the house encroached on the Chens' real property (*see* Coaker Decl. ¶¶ 4-6; Findings & Conclusions ¶¶ 7F-8F, 3L-4L), and that the construction caused the alleged damage to the Chens' real property (*see* Coaker Decl. ¶¶ 5-6, 8). As such, the Chens' property damage was (1) property damage to real property on which Sundance was performing operations, and (2) property damage that arose out of Sundance's operations. (*See* 1st Policy at 20, 22; 2d Policy at 36, 38; 3d Policy at 34, 36; 4th Policy at 31, 33.) Exclusion (J)(5) therefore bars coverage in this case. Under that exclusion, the Chens' property damage was not "property damage to which this insurance applies."

---

equally interesting question—unaddressed by the parties here—of whether the money that the insured is legally obligated to pay in such a situation constitutes "damages" in light of the fact that the insured receives valuable real property in exchange for the money. The court assumes only for the purposes of this order that the answer to both questions is yes.

(1st Policy at 18, 20, 22; 2d Policy at 34, 36, 38; 3d Policy at 32, 34, 36; 4th Policy at 29, 31, 33 (emphasis omitted).)

To resist this conclusion, Defendants argue that the term "performing operations" is ambiguous. (*See* Resp. at 12.) First, they point out that the policies' discussion of "performing operations" contains a cross-referencing error. (*See id.*) The policies state that "you . . . shall be deemed to be 'performing operations' from the time when you . . . begin work until such operations are complete as set forth in paragraph 14.b. of SECTION V – DEFINITIONS – (Products-Completed Operations Hazard)." (1st Policy at 22; 2d Policy at 38; 3d Policy at 36; 4th Policy at 33.) Paragraph 14 of section V, however, deals with an unrelated term. (*See* 1st Policy at 39; 2d Policy at 55; 3d Policy at 53; 4th Policy at 50.) Thus, Defendants argue, "It is not possible to determine the scope of 'performing operations' . . . . Consequently, pursuant to the strict construction required by Washington law, Exclusion J should not act to bar coverage in this instance." (Resp. at 12.)

This argument suffers from several fatal flaws. To begin, "performing operations" is readily understandable despite the cross-referencing error. The policies' discussion of that term references the definition of products-completed operations hazard ("PCOH"). (*See* 1st Policy at 22; 2d Policy at 38; 3d Policy at 36; 4th Policy at 33.) That definition exists as paragraph 18 or 19 of section V. (*See* 1st Policy at 39-40; 2d Policy at 56; 3d Policy at 54; 4th Policy at 51.) Subpart b of the PCOH definition explains when "**[y]our work** will be deemed completed." (1st Policy at 39-40; 2d Policy at 56; 3d Policy at 54;

ORDER- 11

1 | 4th Policy at 51.) Thus, with even minimal investigation, one can ascertain "the scope of
2 | 'performing operations.'" (Resp. at 12.)
3 |     Furthermore, Defendants fail to show any ambiguity that is helpful to their
4 | position. A policy term is ambiguous if it is susceptible to multiple reasonable
5 | interpretations. *See Holden*, 239 P.3d at 347; *B&L Trucking*, 951 P.2d at 256. A term is
6 | not ambiguous merely because the insurer could have further clarified or expressly
7 | defined it. *See English Cove Ass'n*, 88 P.3d at 991. Defendants offer no alternative
8 | interpretation of "performing operations," let alone a reasonable interpretation that would
9 | result in coverage. (*See* Resp. at 12.) In other words, they do not explain what
10 | reasonable interpretation of "performing operations" leads to the conclusion that (1)
11 | Sundance was not performing operations on the Chens' real property or (2) the Chen's
12 | property damage did not arise out of Sundance's operations on the Chens' real property.
13 | (*See* 1st Policy at 20, 22; 2d Policy at 36, 38; 3d Policy at 34, 36; 4th Policy at 31, 33.)
14 | Nor can the court think of a reasonable interpretation that would lead to coverage.
15 | Sundance was in the home construction business, it constructed a home on the Chens'
16 | property, and the Chens' property damage resulted from that construction. (*See* Coaker
17 | Decl. ¶¶ 2, 4-6, 8-9, 17; Findings & Conclusions ¶¶ 4F, 7F-8F, 3L-4L; Reply at 6.)
18 | Exclusion (J)(5) unambiguously applies to these facts.
19 |     Second, Defendants take issue with the policies' lack of clarity about when
20 | "work" begins. (*See* Resp. at 12.) Defendants argue that "it is reasonable to interpret
21 | 'work' as meaning the actual construction of the [Coakers'] House, as opposed to the
22 | determination of the placement of the House." (*Id.*) In light of this alleged ambiguity,

ORDER- 12

Defendants urge the court to "find, at a minimum, that there is a genuine issue of material fact as to the applicability of Exclusion J to the claims at hand." (*Id.*) The court rejects this argument.

To begin, the court finds Defendants' proposed interpretation unreasonable. Sundance was in the home construction business. (*See* Coaker Decl. ¶ 2; Findings & Conclusions ¶ 4F; Reply at 6.) Mr. Coaker attests that Sundance alone chose where to build the house for his family. (*See* Coaker Decl. ¶¶ 5, 8-9 ("Again, to be clear, it was Sundance that located the site for construction of the House, and it was Sundance that constructed the House."), 17.) In these circumstances, it is unreasonable to interpret "work" as including building a home but not choosing the home's placement on the lot.

Moreover, Defendants' interpretation, even if reasonable, would not prevent exclusion (J)(5) from applying to this case. Exclusion (J)(5) applies to property damage that "arises out of" the insured's operations. (1st Policy at 20, 22; 2d Policy at 36, 38; 3d Policy at 34, 36; 4th Policy at 31, 33.) The property damage here arose out of the construction of a house on the Chens' property. (*See* Coaker Decl. ¶¶ 5-6, 8; Findings & Conclusions ¶¶ 3L-4L.) Thus, even if Sundance's "work" did not begin until Sundance started "actual construction" of the Coakers' house (Resp. at 12), the Chens' property damage nevertheless arose out of Sundance's operations. (*See* 1st Policy at 20, 22; 2d Policy at 36, 38; 3d Policy at 34, 36; 4th Policy at 31, 33.) Defendants again fail to offer a reasonable interpretation that leads to coverage. *See Holden*, 239 P.3d at 347; *B&L Trucking*, 951 P.2d at 256; *English Cove Ass'n*, 88 P.3d at 991. The court therefore

concludes that the policies exclude coverage for damages arising out the construction of the Coakers' home.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS PBSIC's motion for summary judgment (Dkt. # 16) and DECLARES that under the policies at issue in this case PBSIC has no duty to indemnify the Coakers, Sundance, and Mike's Roofing for damages arising out of the construction of the Coakers' home.

Dated this 10th day of November, 2015.

JAMES L. ROBART
United States District Judge